**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JOHN LONGINO,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>GREAT OUTDOOR COTTAGES, LLC,<br><br>Defendant/Counterclaim Plaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 25-652-JLH-LDH |

**MEMORANDUM ORDER**

Pending before the Court is Defendant/Counterclaim Plaintiff Great Outdoor Cottages, LLC's ("GOC's") Revised Motion for Partial Summary Judgment (D.I. 53). For the reasons below, the motion is granted.

1. The Court writes primarily for the parties and assumes familiarity with the procedural history of this action. Briefly, this is a contract dispute between Plaintiff/Counterclaim Defendant John Longino ("Longino") and Defendant/Counterclaim Plaintiff GOC. The Complaint (D.I. 1, Ex. A) alleges (among other things) that GOC improperly refuses to appraise Longino's 10% membership interest in GOC in accordance with the governing Operating Agreement (D.I. 31, Ex. 1 (the "Agreement")).

2. GOC has moved for partial summary judgment seeking the Court's ruling on the issue of the applicable valuation standard for Longino's membership interest. (D.I. 53.) GOC asserts, and Longino does not dispute, that this is a threshold issue that the Court should resolve because a "ruling on this issue will enable the appraisal process to commence and determine APPRAISED VALUE, which will bring this case to a conclusion without a trial." (*Id.* at 2; *see also* D.I. 55 at 3, 20.) GOC contends that the value of Longino's membership interest should be determined by an appraisal of "the net fair value of GOC's assets less GOC's debts and liabilities,"

*i.e.*, the asset approach. (D.I. 54 at 2.) Longino contends that the membership interest should be valued using a "going concern methodology."[1] (D.I. 55 at 1.) Because both sides agree that this is a pure question of law for the Court,[2] and because both sides want the Court to resolve their dispute at this stage of the case on the record presently before the Court,[3] the Court will proceed to pick a side. For the reasons below, I agree with GOC.[4]

---

[1] Longino never explains precisely what he means by "going concern methodology." There are several different valuation approaches that could measure a company's value on a going concern basis (e.g., discounted cash flow approach, market approach), including, in some instances, the asset approach proposed by GOC. *See, e.g.*, *Reis v. Hazelett Strip-Casting Corp.*, 28 A.3d 442, 476–78 (Del. Ch. 2011) (explaining that the "asset-based approach is one standard valuation method" and relying in part on the asset approach as an estimate of fair value).

[2] To be sure, Longino's brief disputes certain factual assertions in GOC's brief. (*See* D.I. 55 at 6–7.) But none of those factual assertions are relevant to the contract interpretation issue posed by the parties.

[3] While Longino did not formally move for summary judgment, his brief nevertheless asks the Court to grant him summary judgment on the issue of the applicable valuation standard. (D.I. 55 at 9, 20.)

[4] The parties agree that Delaware law applies. Delaware courts seek to "determine the intent of the parties from the language of the contract." *Exelon Generation Acquisitions, LLC v. Deere & Co.*, 176 A.3d 1262, 1267 (Del. 2017) (citing *Twin City Fire Ins. Co. v. Del. Racing Ass'n*, 840 A.2d 624, 628 (Del. 2003)). Delaware adheres to the objective theory of contracts, meaning that the "contract's construction should be that which would be understood by an objective, reasonable third party." *Id.* (quoting *Salamone v. Gorman*, 106 A.3d 354, 367–68 (Del. 2014)). "When the contract is clear and unambiguous," Delaware courts "give effect to the plain-meaning of the contract's terms and provisions." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159–60 (Del. 2010) (citing *Rhone-Poulenc Basic Chem. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992)). Delaware courts will "read a contract as a whole and [] give each provision and term effect, so as not to render any part of the contract mere surplusage." *Id.* at 1159 (quoting *Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396–97 (Del. 2010)). "If a contract is unambiguous, the Court should interpret it as a matter of law, making summary judgment potentially appropriate." *JFE Steel Corp. v. ICI Ams., Inc.*, 797 F. Supp. 2d 452, 469 (D. Del. 2011) (citing *Tamarind Resort Assocs. v. Gov't of Virgin Islands*, 138 F.3d 107, 110 (3d Cir. 1998)).

3. Several provisions of the Agreement are relevant to the parties' dispute. The Agreement says that GOC is to pay Longino a "REDEMPTION PRICE" which "shall be an amount equal to the APPRAISED VALUE of [the] CALL UNITS[.]" (Agreement § 6.7(a)(1).)[5]

4. As relevant here, the Agreement then provides as follows:

> Section 7.4 Appraised Value. Within fifteen (15) days after the delivery of either - - (i) an EVENT OF CALL NOTICE which evidences the COMPANY's exercise of the CALL RIGHT, or (ii) such other demand by the COMPANY pursuant to the terms of the immediately preceding Section or any other applicable Section of this AGREEMENT - - the COMPANY and the successor of the withdrawn MEMBER who is the subject of the CALL EVENT or such other INVOLUNTARY WITHDRAWAL, as the case may be, shall each appoint an appraiser: (a) to appraise the COMPANY's assets; (b) to determine the APPRAISED VALUE; and (c) to render an APPRAISAL stating its opinion with respect thereto. If the two appraisers agree upon the net equity value of the COMPANY's assets and the subject INTEREST and (if applicable) other MEMBERSHIP RIGHTS, they shall jointly render a single written APPRAISAL stating the APPRAISED VALUE. If the two appraisers cannot agree upon the APPRAISED VALUE, they shall each render a separate APPRAISAL and shall appoint a third appraiser, who shall: (a) appraise the COMPANY's assets and the subject INTEREST and (if applicable) other MEMBERSHIP RIGHTS; (b) determine the APPRAISED VALUE; and (c) render an APPRAISAL stating his, her or its opinion with respect thereto. Each party shall pay the fees and costs of the appraiser appointed by that party, and the fees and other costs of the third appraiser shall be shared equally by both parties. The APPRAISED VALUE contained in the aforesaid joint APPRAISAL shall be deemed to be the APPRAISED VALUE unless it is necessary to obtain the APPRAISAL of the aforesaid third appraiser, in which case the APPRAISED VALUE contained in APPRAISAL delivered by the aforesaid third appraiser shall be deemed to be the APPRAISED VALUE; provided, however, that if the APPRAISED VALUE as described in the APPRAISAL of the third appraiser is - - (i) more than the higher of the first two APPRAISALS, the higher of the first two APPRAISALS shall govern, or (ii) less than the lower of the first two APPRAISALS, the lower of the first two APPRAISALS shall govern.

[5] The parties agree that Section 6.7(a)(1) applies. (D.I. 55 at 5; D.I. 56 at 2–4, nn.2–3.)

(*Id.* § 7.4.) And the Agreement further defines "APPRAISED VALUE" as follows:

> Section 1.7 Appraised Value. The term "APPRAISED VALUE" means the appraised net value of the equity of the COMPANY and its assets, and the subject INTEREST and (if applicable) other MEMBERSHIP RIGHTS, after taking into account all of the COMPANY's debts and other liabilities, as stated in the APPRAISAL which is delivered and prepared in accordance with the terms of the Section of Article 7 hereof which is captioned, "Appraised Value"; provided, however, that the appraiser(s) shall not apply or otherwise factor in any minority or lack of liquidity discounts.

(*Id.* § 1.7.)

5. As between GOC's contention that the Agreement calls for valuation using an "asset approach" and Longino's contention that the Agreement calls for a "going concern methodology," I conclude that the language of the Agreement more closely aligns with GOC's contention. The Agreement states that the APPRAISED VALUE of the membership interest is valued by determining the net fair value of GOC's assets less GOC's debts and liabilities, *i.e.*, the asset approach. It further provides that the APPRAISED VALUE is "the appraised net value of the equity of the COMPANY and its assets . . . after taking into account all of the COMPANY's debts and other liabilities[.]" (*Id.*) As equity generally is calculated as assets less liabilities, Section 1.7 requires the appraiser to determine the value of Longino's INTEREST in the COMPANY's equity by determining the value of its assets and then subtracting the COMPANY's liabilities.[6]

[6] Plus, use of the asset approach is not unreasonable in this case given that the COMPANY designs and manufactures prefabricated homes, a business that plausibly requires substantial tangible assets. *See Reis*, 28 A.3d 442 at 476 (explaining that the asset approach "can be an appropriate valuation method for a business that derives significant value from its physical assets"); *see also* (D.I. 26 ¶ 4 (Longino admitting that the COMPANY manufactures prefabricated homes and other structures)).

6. Section 7.4 is consistent with GOC's interpretation. Section 7.4 provides an order of operations for the appraiser: first "(a) to appraise the COMPANY's assets" then "(b) to determine the APPRAISED VALUE" in order "(c) to render an APPRAISAL[.]" (Agreement § 7.4.) If Longino were correct that the Agreement called for a going concern valuation relying on the value of the COMPANY's future earnings, it's unlikely that the Agreement would first require the appraiser to value the COMPANY's assets. Similarly, Section 7.4 also refers to the APPRAISED VALUE as "the net equity value of the COMPANY's assets and the subject INTEREST[.]" This repeated reference to the net equity value of the COMPANY's assets would be odd language to use to refer to the value of the COMPANY's future earnings (which doesn't require calculation of the COMPANY's assets). Longino's proposed interpretation would thus render the references to the COMPANY's assets mere surplusage.

7. Longino's other arguments are similarly unpersuasive. Longino suggests that language in Section 1.7 of the Agreement referring to "the equity of the COMPANY," "the subject INTEREST," and "other MEMBERSHIP RIGHTS" supports a "going concern methodology." (D.I. 55 at 11.) But those phrases are not inconsistent with an asset approach. As noted, the equity of the COMPANY is its assets less its liabilities—the mere use of the word "equity" in Section 1.7 does not mandate something other than an asset valuation. Similarly, the mention of "the subject INTEREST," and "(if applicable) other MEMBERSHIP RIGHTS" simply points out that what is being appraised is the member's INTEREST and/or MEMBERSHIP RIGHTS in the COMPANY. (Agreement § 7.4.) So, as relevant here, to calculate the subject INTEREST, the appraiser simply takes the holder's interest (say 10% of the COMPANY) multiplied by the appraised net equity of the COMPANY and its assets to determine the APPRAISED VALUE of the INTEREST.

8. Longino next points to the phrase in Section 1.7 stating that "the appraiser(s) shall not apply or otherwise factor in any minority or lack of liquidity discounts." (D.I. 55 at 11; Agreement § 1.7.) But Longino does not explain how that necessarily supports his interpretation given that a minority discount could (or could not) apply regardless of which valuation approach is used.

9. Longino further says the APPRAISED VALUE should be interpreted to mean "fair value" in accordance with Delaware caselaw interpreting Delaware's limited liability company statutes. (D.I. 55 at 11–13 (citing 6 Del. C. § 18-604).) For several reasons, I disagree. As an initial matter, Longino never explains why the asset approach—one of several commonly accepted valuation standards—isn't a fair value standard.[7] Had the parties intended to incorporate a defined standard under Delaware law, they easily could have done so. They did not. Instead, they provided their own specific definition of APPRAISED VALUE in Sections 1.7 and 7.4 of the Agreement.[8] Indeed, the very statute Longino cites provides that parties can set their own standards in the

[7] *See, e.g.*, *Kahn v. Household Acquisition Corp.*, 591 A.2d 166, 172–75 (Del. 1991) (affirming trial court's use of net asset value to determine fair value in appraisal proceeding); *Reis*, 28 A.3d at 476–78 (Del. Ch. 2011) (explaining that the "asset-based approach is one standard valuation method" and relying in part on the asset approach as an estimate of fair value).

[8] Longino also makes a passing reference to Section 7.3 of the Agreement. (D.I. 55 at 3, 12.) Although it is no model of clarity, Section 7.3 refers to the "fair market value of the MEMBER's INTEREST[.]" (Agreement § 7.3.) But Section 7.3 doesn't support Longino. As noted above, Longino hasn't explained why the asset approach can't be considered fair market value here. Moreover, the specific definition of APPRAISED VALUE in Sections 1.7 and 7.4 controls over Section 7.3's general reference to fair market value. *See Thompson St. Cap. Partners IV, L.P. v. Sonova United States Hearing Instruments, LLC*, 340 A.3d 1151, 1166 (Del. 2025) (explaining that "general terms of the contract must yield to more specific terms"). Plus, Section 7.3 refers to the transaction as the "liquidation of the INTEREST," which further supports GOC's proposed asset approach.

governing agreement.[9] *See* 6 Del C. § 18-604 (providing that "upon resignation any resigning member is entitled to receive any distribution to which such member is entitled under a limited liability company agreement"); *see also* 6 Del. C. § 18-1101(b) ("It is the policy of this chapter to give the maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements.").[10]

10. Longino next contends that the Court should interpret the Agreement in line with cases interpreting Delaware's shareholder appraisal rights statute. (D.I. 55 at 14–16 (citing 8 Del. C. § 262).) But the appraisal statute, which does not provide any specific valuation standard, has no relevance to this case. Longino does not explain why the Court should override the plain language of the parties' agreement to apply a standard from a different context.[11]

11. At bottom, Longino's statutory arguments miss the mark because the Agreement provides its own particular definition of APPRAISED VALUE. If the parties intended to

[9] Longino's cited cases are inapt. In *Robinson v. Darbeau*, No. 2019-0853, 2021 WL 776226, at *9–10, 12 n.122 (Del. Ch. Mar. 1, 2021), the Delaware LLC statute applied because there was no written LLC agreement. And *Olson v. Halvorsen*, No. 1884, 2009 WL 1317148, at *8 (Del. Ch. May 13, 2009), supports GOC as it explained that "if a valid and enforceable agreement of the parties conflicts with the fair value statute, the agreement of the parties will govern."

[10] Longino makes a passing reference to Section 7.3 of the Agreement, which refers to "Section 4A-606.1(a)(1) of the ACT," which Section 1.1 defines as "the Delaware Limited Liability Company Act, Title 6, Chapter 18, Delaware Corporation And LLC Laws Annotated[.]" (D.I. 55 at 12; Agreement §§ 1.1, 7.3.) But there is no Section 4A-606.1(a)(1) of the Delaware Limited Liability Company Act.

[11] Again, Longino's cited cases are inapt. Both *Matthew v. Laudamiel*, No. 5957, 2012 WL 605589, at *21, n.144 (Del. Ch. Feb. 21, 2012), and *Somerville S Trust v. USV Partners, LLC*, No. 19446, 2002 WL 1832830, at *5, n.4 (Del. Ch. 2002), are cited for the general proposition that it's proper to look to caselaw interpreting one statute in interpreting similar statutes. Here, the Court is not asked to interpret a statute but instead to interpret the Agreement, which overrides the cited statutes. And Longino's cited cases interpreting the appraisal statute are irrelevant because the Agreement's definition of APPRAISED VALUE controls.

incorporate a definition from statutes or caselaw, they could have done so—but they did not. Longino cites no case in which a Delaware court overrode the plain language of the parties' agreement and instead applied a statutory or caselaw standard.

For the reasons stated above, IT IS HEREBY ORDERED THAT Defendant's Motion for Partial Summary Judgment (D.I. 53) is GRANTED. The Agreement calls for an asset approach.

Dated: September 17, 2026

The Honorable Jennifer L. Hall
UNITED STATES DISTRICT JUDGE